**SIGNED THIS: March 11, 2026**

**Peter W. Henderson
Chief United States Bankruptcy Judge**

---

UNITED STATES BANKRUPTCY COURT
CENTRAL DISTRICT OF ILLINOIS

In re:

RANDOLPH NEIL CHAPMAN
and SHERYL E. CHAPMAN,

Debtors.

Case No. 25-80843

OPINION

     Everyone in Illinois is entitled to an estate of homestead in their residence up to a certain value (until recently, $15,000). 735 ILCS 5/12-901. The homestead estate is broadly exempt from liability for debts. *Id*. When the homestead is sold, the proceeds of the estate are also exempt for one year. 735 ILCS 5/12-906. And if the proceeds are reinvested in a new homestead, they are entitled to the same exemption as the original homestead. *Id*.

     The Debtors in this Chapter 13 case sold their homestead in May 2025. When they filed their bankruptcy petition in November 2025, money representing the proceeds of the homestead estate was still in their bank accounts. They have claimed a $30,000 exemption ($15,000 each) in that money under §12-906. The Chapter 13 Trustee objects to the exemption on two grounds. First, she argues the proceeds are not exempt

under state law, even within one year of the sale, because the Debtors do not intend to reinvest the money in a new homestead. Second, even if the proceeds are exempt now, they would not be exempt in May 2026, and the bankruptcy case will still be open then, so the money should be available for distribution to creditors. Both arguments are supported by decisions of this Court. *In re Ziegler*, 239 B.R. 375 (Bankr. C.D. Ill. 1999) (Altenberger, J.); *In re Stewart*, 452 B.R. 726 (Bankr. C.D. Ill. 2011) (Perkins, J.).

The objection will be overruled for largely the same reasons given in a third decision of this Court. *In re Awayda*, 574 B.R. 692 (Bankr. C.D. Ill. 2017) (Gorman, J.). Under Illinois law, the proceeds were exempt in November 2025. Under federal law, exemptions in bankruptcy are measured on the date the petition is filed. The Debtors, who filed their petition in November 2025, are therefore entitled to exempt the proceeds. Nothing in Chapter 13, as opposed to Chapter 7, alters that conclusion.

**Background**

Randolph and Sheryl Chapman are retired and subsist on Social Security and pension income. They sold the house they owned in Joliet, Illinois, in May 2025, and they now rent an apartment in Milan, Illinois. The house sold for $349,000, of which they received about $100,000 after the mortgage and closing costs were paid. When they filed their Chapter 13 bankruptcy petition in November 2025, they held $15,000 in a checking account and $25,000 in an 18-month certificate of deposit. The Debtors claimed an exemption in $30,000 of that money as proceeds of a homestead sale under the Illinois homestead exemption, 735 ILCS 5/12-906. The Chapter 13 Trustee objects to the claim of exemption.

The Debtors propose in their Chapter 13 plan to make monthly payments of $725 over 36 months, for a total of $26,100. No secured claims are provided for. After deducting attorney and trustee fees, about $20,000 will be paid to unsecured creditors, who have filed $100,000 worth of claims. The Chapter 13 Trustee objects to confirmation of the plan under 11 U.S.C. §1325(a)(4), also known as the "best interest of creditors" test. Should her objection to the homestead exemption be sustained, at least $30,000 would have to be paid into the plan because that amount would be paid to unsecured creditors if the Debtors' estate were liquidated under Chapter 7.

The Court has jurisdiction to resolve the objection to the claim of exemption. 28 U.S.C. §157(a), (b)(1), (b)(2)(B); 28 U.S.C. §1334; see ILCD LR 40.2.

2

**Discussion**

An exemption is an interest withdrawn from the bankruptcy estate (and hence the creditors) for the benefit of the debtor. *Owen v. Owen*, 500 U.S. 305, 308 (1991). Section 522 of the Bankruptcy Code determines what property a debtor may exempt. *Id*. Illinois has opted out of the federal exemptions, 735 ILCS 5/12-1201, so a bankruptcy debtor here may exempt any property that is exempt under Illinois law in effect on the date of the filing of the petition. 11 U.S.C. §522(b)(2), (b)(3)(A). Property exempted under §522 is (with some exceptions not relevant here) immunized during and after the case against liability for prebankruptcy debts. *Owen*, 500 U.S. at 308; 11 U.S.C. §522(c).

The Trustee's arguments raise one issue of state law and two issues of federal law. To resolve her objection, I must (1) determine whether the Debtors' $30,000 was exempt under state law in effect in November 2025, and, if so, (2) determine whether that exemption shields the money from creditors (A) in bankruptcy in general, and (B) in Chapter 13 in particular.

**I.     Under Illinois law, homestead proceeds are exempt for one year.**

The first determination requires me to interpret state law. Given the lack of an authoritative decision by an Illinois court on the issue presented, I must guess how a state court would interpret the homestead exception. See *Giovanelli v. Walmart Inc.*, 164 F.4th 1052, 1054–55 (7th Cir. 2026). That requires following principles of statutory interpretation as articulated by the Illinois Supreme Court. *Shipley v. Chicago Bd. of Election Commissioners*, 947 F.3d 1056, 1061 (7th Cir. 2020).

Section 12-901 of the Illinois Code of Civil Procedure, as it existed in November 2025[1], provides that every individual is entitled to an estate of homestead to the extent of $15,000 of an individual's interest in property occupied by him or her as a residence. 735 ILCS 5/12-901. Section 12-906 protects the proceeds of that estate when the residence is sold. It reads, in relevant part, and with a line break added:

---

[1] The homestead statutes were amended to increase the amount of the exemption from $15,000 per owner to $50,000 per owner (for up to 2 owners) on January 1, 2026. The relevant statutes are otherwise unchanged. Citations to the homestead statutes in this opinion refer to those in effect in November 2025. See 11 U.S.C. §522(b)(3)(A).

3

> When a homestead is conveyed by the owner thereof, … the proceeds thereof, to the extent of the amount of $15,000, shall be exempt from judgment or other process, for one year after the receipt thereof, by the person entitled to the exemption,
>
> and if reinvested in a homestead the same shall be entitled to the same exemption as the original homestead.

735 ILCS 5/12-906.

The primary goal of statutory interpretation in Illinois is to "ascertain and give effect to the intent of the legislature." *Rainey v. Retirement Bd. of Policemen's Annuity and Benefit Fund of City of Chicago*, 2025 IL 131305 ¶12 (2025). A statute's text, if unambiguous, must be applied without resort to other aids of statutory construction, because a "statute's plain language is the best indicator of legislative intent." *Id*. I conclude below that the statute's text is unambiguous, so the plain meaning controls: proceeds are unconditionally exempt for one year. Lest there be doubt, the plain meaning is consistent with other states' approaches and the history of the legislation.

### A. The plain language of §12-906 does not require an intent to reinvest.

Proceeds from the sale of a homestead are plainly exempt for one year. *Awayda*, 574 B.R. at 698–99; *Stewart*, 452 B.R. at 736. "If [the proceeds are] derived from a sale of the homestead, and represent[] that estate, the spirit of the statute exempts [them] for one year." *Watson v. Saxer*, 102 Ill. 585, 592 (1882). And if the proceeds are reinvested in a new homestead, then they will retain their exempt status. *Cochran v. Cutler*, 350 N.E.2d 59, 63 (Ill. App. Ct. 1976). The statute contains two provisions that address separate issues and do not conflict with each other. Under a plain reading, the Debtors' $30,000 was exempt in November 2025 because it was derived from the sale of the homestead, which occurred within one year, and it represented that estate. The language about reinvesting the proceeds is simply inapplicable here.

Judge Altenberger concluded that "[a]lthough §12-906 does not specifically require that the debtor intend to use the proceeds to acquire another homestead, … such a requirement [is] implicit in the statute." *Ziegler*, 239 B.R. at 378. With respect, that conclusion does not follow from Illinois rules on statutory interpretation. Illinois courts do not depart from the plain language and meaning of a statute by reading into it exceptions, limitations, or conditions that the legislature did not express. *People v. Reed*, 2025 IL 130595 ¶26 (2025); see *Matter of Robinson*, 811 F.3d 267, 272 (7th Cir. 2016) (refusing to "read a restriction" into Illinois exemption statute).

4

The strongest argument under Illinois interpretive rules to support *Ziegler*'s conclusion would rely on the idea that an ambiguity may exist when the legislature is silent on an issue that implicates the statute's purpose. *People v. Marshall*, 950 N.E.2d 668, 674 (Ill. 2011). And the purpose of §12-906, according to *Ziegler*, is to protect proceeds until they may be reinvested in a new homestead. 239 B.R. at 379. But on this subject the legislature was not silent, it was explicit: proceeds are exempt for one year. *Ziegler* relied upon an analogy to Florida law to read an intent requirement into §12-906. *Id*. at 378–79. But as discussed below, Florida's homestead provision actually *is* silent on the treatment of proceeds, while §12-906 is not. Because there is no ambiguous silence, it would be inappropriate to read additional terms into the statute.

This is also not an instance in which the statute is ambiguous because it is "capable of being understood by reasonably well-informed persons in two or more different ways." *People v. Brown*, 2026 IL 130930 ¶46 (Ill. 2026). Despite their differences, my three colleagues have all understood that the plain text does not include an intent-to-reinvest requirement. Their disagreements have to do with the purpose of the statute and how federal bankruptcy law should incorporate that purpose; they do not understand the statutory language itself in different ways.

Relying on plain language can be unsatisfying, even if it makes things simple. For a better understanding as to why §12-906's plain text is not potentially ambiguous or absurd, it helps to know about state homestead exemptions in general and the history of §12-906 in particular.

### B.     The plain language of §12-906 is consistent with other states' laws.

Illinois is not alone in providing exemptions for homesteads. Although the common law recognized exemptions for certain real and personal property, the homestead exemption is an American statutory innovation. Haskins, *Homestead Exemptions*, 63 Harv. L. Rev. 1289, 1289 (1950). Most states have a homestead exemption, and each state's homestead exemption may differ based upon statutory text or judicial attitudes towards the exemption. *Id*. at 1290–91.

1.     Some states make no provision for the proceeds of voluntary homestead sales. Naturally, some of those states do not exempt homestead proceeds. E.g., *In re Mason*, 607 B.R. 360, 365–66 (Bankr. N.D. Ga. 2019) (Georgia). Others, like Florida, have recognized that proceeds ought to be protected even in the absence of statutory language. See Fla. Const. Art. X §4(a)(1). "In recognition of the liberal interpretation of the homestead exemption," the Florida Supreme Court held that proceeds are exempt "if, and only if, the vendor shows … an abiding good faith intention … to reinvest the

5

proceeds thereof in another homestead within a reasonable time." *Orange Brevard Plumbing & Heating Co. v. La Croix*, 137 So. 2d 201, 206 (1962). That judicial gloss expanded the reach of the homestead exemption in Florida. See also *Obenshain v. Obenshain*, 480 S.W.2d 567, 568 (Ark. 1972); *Millsap v. Faulkes*, 20 N.W.2d 40, 41 (Iowa 1945); *Schumann v. Davis*, 183 N.W. 740, 741 (Mich. 1921).

Other states have specific statutory provisions governing homestead proceeds. Their approaches vary based primarily on (1) how much time is "reasonable" to exempt proceeds and (2) whether an intent to reinvest is required to maintain the proceeds as exempt. On one end, Mississippi protects the proceeds as exempt "in all circumstances." *Davis v. Lammons*, 151 So. 2d 907, 909 (Miss. 1963); see Miss. Code §85-3-49. On the other end, Oregon and Washington condition the exemption, which lasts one year, on an intent to reinvest the proceeds in another homestead. ORS §18.395(2); RCW §6.13.070(3); see also Wis. Stat. §815.20 (two years with intent to reinvest). In the middle are states like Texas, which exempts proceeds for six months, full stop, Tex. Prop. Code §41.001(c); *London v. London*, 342 S.W.3d 768, 775 (Tex. Ct. App. 2011); California, which does the same unless the debtor claims a homestead exemption on other property during those six months, Cal. Civ. Proc. Code §704.720(b); and South Dakota, which keeps the proceeds "absolutely exempt" for one year, S.D. Codified Laws §43-45-3(2).

2. Clearly, the homestead exemption's purpose, which my colleagues have all thoroughly discussed, cannot dictate §12-906's interpretation. All states enacted their homestead exemptions, broadly speaking, to provide for the security of the family. Haskins, *supra*, 63 Harv. L. Rev. at 1289. The stingiest states share that purpose with the states most generous to debtors. Compare *Hardeman v. Downer*, 39 Ga. 425 (1869), with *Hill v. Franklin*, 54 Miss. 632 (1877). And yet the actual homestead exemptions vary widely according to the particulars of state law. A number of state legislatures have agreed with Illinois' that an unconditional exemption for a certain period of time is consistent with the purpose behind homestead laws. Section 12-906's purpose therefore does not conflict with a plain reading of the statute.

3. That said, the purpose is relevant in one respect. Exemption statutes in Illinois, like the exemption provision in Florida, are liberally construed in favor of debtors, not restricted in favor of creditors, due to their remedial nature. *Cole v. Marple*, 98 Ill. 58, 64 (1880); *Matter of Barker*, 768 F.2d 191, 196 (7th Cir. 1985) (applying Illinois law). If a court is to depart from the text of the homestead exemption, its departure should expand, not restrict, the availability of the exemption. In Florida, legislation did not extend the homestead exemption to proceeds; the judiciary, by reading in a protection for proceeds (subject to an intent to reinvest within a reasonable time), expanded the availability of the exemption. *Orange Brevard Plumbing & Heating Co.*, 137

6

So. 2d at 206. Section 12-906, by contrast, already protects proceeds for one year; the judiciary, by reading in an intent to reinvest, would restrict the availability of the homestead exemption. The lesson from Florida is to apply a liberal construction to the homestead exemption, not to require an intent to reinvest in all circumstances. Compare with *Ziegler*, 239 B.R. at 378–79.

4. Section 12-906 does not just exempt proceeds for one year. It also provides, in its second clause, that if the proceeds are reinvested in a new homestead "the same shall be entitled to the same exemption as the original homestead." A few other states have comparable provisions, and the clarity in their statutes can help a reader understand the murkier language in §12-906.

In Iowa, for example, "[w]here there has been a change in the limits of the homestead, or a new homestead has been acquired with the proceeds of the old, the new homestead, to the extent in value of the old, is exempt from execution in all cases where the old or former one would have been." Iowa Code §561.20. Hawaii's homestead exemption is closer still:

> The [proceeds] shall be entitled, for the period of six months thereafter, to the same protection [as the homestead].... If the defendant, within such six-month period, applies such proceeds to the purchase of real property, the date of acquisition and commencement of residence for the purpose of [the homestead exemption] shall be considered to be the date of the acquisition of interest in and commencement of residence on the real property whose sale resulted in such proceeds.

HRS §651-96. Iowa and Hawaii contemplate that (1) people move and (2) the value of the exemption changes from time to time. In both states, the original homestead is maintained when those events happen so long as the debtor complies with the statutory conditions. As I explain below, Illinois follows the same rule.

### C. The history of §12-906 reveals why it contains two provisions.

The history of §12-906 shows that its second clause—"and if reinvested in a homestead the same shall be entitled to the same exemption as the original homestead"—is to preserve the original homestead in case one moves and the law changes. It does not affect the unconditional nature of the one-year proceeds exemption.

The original Illinois Homestead Act of February 11, 1851, exempted the homestead "to the value of one thousand dollars." The Act concerned involuntary sales

7

and made no provision for voluntary conveyances. Section 5 of the Act provided that when a homestead was sold on execution the officer conducting the sale was to pay "out of the proceeds of such sale … to each execution debtor the said sum of one thousand dollars, which shall be exempt from execution for one year thereafter." The 1851 Act did not mention reinvesting those proceeds in a new homestead.

The Illinois Constitution of 1870 directed the general assembly to "pass liberal homestead and exemption laws." The legislature thus amended the Homestead Act to apply to both voluntary and involuntary sales of homesteads. See *Watson*, 102 Ill. at 592. Effective July 1, 1872, section 6 of the Act provided:

> When a homestead is conveyed by the owner thereof, … the proceeds thereof, to the extent of the amount of *fifteen hundred* dollars, shall be exempt from execution or other process for one year after the receipt thereof by the person entitled to the exemption.

Act of Mar. 22, 1872 (emphasis added). In short, the exemption amount went up to $1,500 and the first clause of our modern statute, §12-906, was enacted. (Section 1 of the Act, now §12-901, provided for an estate of homestead of up to $1,500.) The statute still said nothing about reinvesting the proceeds.

The General Assembly amended the law just a year later. Effective July 1, 1873, section 6 of the Homestead Act now provided:

> When a homestead is conveyed by the owner thereof, … the proceeds thereof, to the extent of the amount of *one thousand* dollars, shall be exempt from execution or other process for one year after the receipt thereof by the person entitled to the exemption, *and if reinvested in a homestead the same shall be entitled to the same exemption as the original homestead.*

Act of Apr. 30, 1873 (revisions in italic). Similarly, section 1 reduced the value of the homestead estate back to $1,000. In short, the second clause of §12-906 was added at the very same time the legislature reduced the exemption amount from $1,500 to $1,000.

The inference is inescapable: the second clause of §12-906 serves as a saving clause, not an alteration of the unconditional one-year exemption in homestead proceeds. In 1873, Illinois did not have a general savings clause; what is now codified at 5 ILCS 70/4 was enacted a year later, in 1874. *People v. Glisson*, 782 N.E.2d 251, 255 (Ill. 2002). Illinois has always limited the right of the legislature to deprive its citizens of

8

vested estates, see *Henson v. Moore*, 104 Ill. 403, 408–09 (1882), and §12-906's second clause ensures that the homestead estate cannot be diminished by later legislation. It also ensures that a person is not stuck in their home if they wish to preserve an older, more generous exemption. One who acquired a homestead in July 1872 could protect their $1,500 estate in homestead even if they moved after the 1873 revision to the law.

\*     \*     \*

The Trustee's argument that the reinvestment language "suggests that §12-906 was intended to be limited to individuals reinvesting in a replacement homestead" is not supported by a plain reading of the statute and is belied by the historical record. Like Hawaii and Iowa, Illinois has chosen to permit a debtor to "grandfather in" an original homestead's value even if they move and the law changes. The first clause of §12-906 unconditionally exempts proceeds for one year, and the second clause permits a debtor to retain the value of their original homestead estate when they move. The two clauses address separate issues.

## II.     Under federal bankruptcy law, a debtor's exemptions are fixed on the date they file their bankruptcy petition.

The Debtors' homestead proceeds were exempt under state law in November 2025. Property that is exempt under state law may be exempted in bankruptcy. 11 U.S.C. §522(b)(1), (b)(3)(A). A debtor's exemptions are fixed in bankruptcy as of the date of filing. *Awayda*, 574 B.R. at 695, citing *White v. Stump*, 266 U.S. 310, 313 (1924); *Owen v. Owen*, 500 U.S. 305, 314 n.6 (1991). Therefore, the homestead proceeds that were exempt under state law in November 2025 are exempt in this bankruptcy case filed in November 2025. It is no more complicated than that.

### A.     *Burciaga* requires the Court to apply the snapshot rule.

And yet—it is not that simple, according to a number of appellate and trial courts, including this one in *Stewart*. The so-called "snapshot" rule of *White v. Stump* applies to claims of exemptions. But Judge Perkins articulately explained why the snapshot rule might not serve the purposes of the homestead-proceeds exemption. *Stewart*, 452 B.R. at 739–43. In particular, he noted that the exemption is temporary—it expires if the proceeds have not been reinvested within one year—and that the purpose of the exemption under state law was to provide a one-year bridge between homes. *Id*. Creditors who wait a year to collect face no obstacle under §12-906 when a debtor does not reinvest the proceeds, so why should a bankruptcy trustee be prevented from ever collecting even when a year has passed without reinvestment? *Id*.

9

Judge Perkins did not stand alone in his view. Remember that Texas has a straightforward exemption scheme: homestead proceeds are exempt for six months, full stop. Tex. Prop. Code §41.001(c). The Fifth Circuit recognized that proceeds could not be reached for six months under state law. *In re Zibman*, 268 F.3d 298, 305 (5th Cir. 2001). And yet it denied an exemption to debtors who filed their bankruptcy petition about two months after selling their homestead. *Id*. at 300–01. The court framed its decision as applying "the *entire* Texas law that is applicable." *Id*. at 304. Because the state only "freezes" the proceeds for six months, a bankruptcy court cannot freeze them indefinitely. *Id*.; see also *In re Golden*, 789 F.2d 698, 700 (9th Cir. 1986) (same in California). The Fifth Circuit has more recently twisted itself into knots trying to distinguish *Zibman*, see *Matter of Hawk*, 871 F.3d 287, 293–96 (5th Cir. 2017), but it remains good law in that jurisdiction.

The Seventh Circuit, by contrast, adheres to the snapshot rule because federal law, not state law, governs bankruptcy exemptions. *Matter of Burciaga*, 944 F.3d 681 (2019). It describes the straightforward rule:

> What is exempt, and what is not, depends on the state of affairs when bankruptcy begins. 11 U.S.C. §522(b)(3)(A); *Owen v. Owen*, 500 U.S. 305, 314 n.6 (1991) []; *White v. Stump*, 266 U.S. 310, 313 (1924) []. Like most other states, Illinois exempts some of a home's value and some of an auto's value. If a person sells a car for cash and files for bankruptcy the next day, creditors can reach the cash; the estate never had a car that could be exempt.
>
> Property vests in the estate on the day bankruptcy begins. 11 U.S.C. §541(a)(1). This is the property available to satisfy creditors' pre-filing claims. 11 U.S.C. §522(c). If the debtor has cash on that day, its treatment depends on how much cash a state exempts. If the debtor has a car on that day, its treatment depends on how much of a car's value the state exempts. And, if a debtor has a wage claim, how much the creditors can reach depends on how the state treats unpaid wages.
>
> We must assess the legal effect of things as they were when this bankruptcy began, not as they might have been. That a car may be sold while bankruptcy is under way does not make all of the proceeds available to satisfy pre-bankruptcy claims; the debtor retains any exempted amount. See, e.g., … *Pasquina v. Cunningham*, 513 F.3d 318, 324 (1st Cir. 2008).

10

*Burciaga*, 944 F.3d at 684–85. To the extent that the application of state exemption statutes in federal court produces inequitable results, that is a matter for Congress, because "the Bankruptcy Code is what it is and cannot be overridden in the name of equity." *Id*. at 685, citing *Law v. Siegel*, 571 U.S. 415 (2014). *Burciaga* confirms that Judge Gorman's approach in *Awayda* was correct. That an exempt asset may lose its exempt character while bankruptcy is under way does not make it available to satisfy pre-bankruptcy claims. *Burciaga*, 944 F.3d at 685; see also *In re Rockwell*, 590 B.R. 19, 28–29 (Bankr. D. Me. 2018) (relying on *Cunningham*).

The idea that an exception to the snapshot rule should exist because of the purpose behind the Illinois homestead exemption, see *Stewart*, 452 B.R. at 741–42, is a non-starter after *Burciaga*. Section 522 asks only what is exempt under state law at the time of the petition, not what state legislators intended or understood would happen in federal court. 944 F.3d at 683–84. *Burciaga* also dispatched with the rationale that led the Fifth Circuit astray in *Zibman*. "[E]xemption in bankruptcy happens as a result of §522, not as a result of state legislators' plans or desires or understanding." *Burciaga*, 944 F.3d at 683–84.

Though *Burciaga* is binding precedent, it would not bind if it conflicted with Supreme Court authority. *Zibman* suggests that applying the snapshot rule here would run afoul of *Myers v. Matley*, 318 U.S. 622 (1943). But *Zibman* mangled the holding of *Myers* by thinking that post-petition events may alter a debtor's right to a homestead exemption. 268 F.3d at 303–04. In fact, *Myers* held the opposite. The debtor's right to a homestead there was established under state law on the date his petition was filed. A later act to vindicate that right "did not change" the "relative status of the claimant and the trustee," so it was allowed. 318 U.S. at 628. Contrast with *White v. Stump*, where the debtor's homestead right was not established under state law on the date his petition was filed, so he was not entitled to an exemption based upon a later attempt to claim the right. 266 U.S. at 311, 313. Here, under Illinois law, the Debtors had a right on the date they filed their petition to exempt homestead proceeds. Under both *Myers* and *White*, they are therefore entitled to an exemption under federal bankruptcy law.

Section 12-906 is no different from any other exemption. All exemptions are conditional in this ephemeral world. No one knows what tomorrow will bring. The snapshot rule accepts that truth and chooses a particular point in time to fix the debtor's rights and obligations. "When the law speaks of property which is exempt and of rights to exemptions, it of course refers to some point of time." *White*, 266 U.S. at 313. That point of time under federal bankruptcy law is the filing of the petition. 11 U.S.C. §522(b)(3)(A); *Burciaga*, 944 F.3d at 684. Creditors under state law were unable to reach

11

the Debtors' $30,000 in November 2025; creditors under federal bankruptcy law are treated the same. 11 U.S.C. §522(c).

### B. Chapter 13 is no different than Chapter 7 when it comes to exemptions.

The Trustee finally points out that all cases mentioned so far arose under Chapter 7. She notes that Judge Gorman's reliance on the snapshot rule was in part based upon the need to efficiently administer cases "in Chapter 7." *Awayda*, 574 B.R. at 696. Chapter 13, by contrast, lasts for three to five years, 11 U.S.C. §1322(d). It would be simple, the Trustee argues, to determine whether the proceeds are reinvested within a year in Chapter 13 cases; and if they are not, the proceeds should be made available to creditors lest the debtors retain $30,000 that they would not have been able to keep away from creditors after one year.

Section 522 applies equally in Chapter 7 and Chapter 13. 11 U.S.C. §103(a). *Burciaga* interprets §522 and that interpretation is binding in both chapters. In addition, exemptions are relevant in Chapter 13 only under 11 U.S.C. §1325(a)(4). Chapter 13 debtors remain in possession of both exempt and nonexempt property throughout the case. 11 U.S.C. §1306(b). A debtor who exempts nothing still keeps all their property. Exemptions affect only a debtor's monthly payments. Section 1325(a)(4) requires that the payments leave unsecured creditors no worse off in Chapter 13 than they would have been under Chapter 7. That "best interest of creditors" test analyzes the petition as if it were filed under Chapter 7, which of course is subject to the snapshot rule articulated in *Burciaga*, as discussed above.

The Trustee also notes that Chapter 13 also contains a good-faith requirement. See 11 U.S.C. §1325(a)(3), (a)(7). She has not yet objected to confirmation of the plan on good-faith grounds, so I do not resolve here whether the Debtors' plan was filed in good faith. But I am skeptical that I could find that a debtor who does nothing more than take an exemption they are legally entitled to is not acting in good faith. The "focus of the good faith inquiry" is whether, under the totality of the circumstances, "the filing is fundamentally fair in a manner that complies with the spirit of the Bankruptcy Code's provisions." *Matter of Love*, 957 F.2d 1350, 1357 (7th Cir. 1992). It is not whether the debtor is committing every resource they possibly could—including exempt assets that are not liable during or after the case for any prepetition debt, §522(c)—to fund their plan. See *Matter of Smith*, 848 F.2d 813, 820 (7th Cir. 1988); cf. *In re Jones*, 73 Bankr. Ct. Dec. 218, 2024 WL 4229130, at *5 (Bankr. C.D. Ill. 2024) (Henderson, J.), citing *Anderson v. Cranmer*, 697 F.3d 1314, 1319 (10th Cir. 2012).

"Good faith" is often invoked the same way 11 U.S.C. §105(a) is invoked when application of the Bankruptcy Code yields—in the view of a party or a judge—an unsatisfactory answer. Section 105(a) does not provide a reason to depart from the detailed exemption scheme of §522, and I see no reason why the good-faith requirements of §1325 would do so either. "Section 522 does not give courts discretion to grant or withhold exemptions based on whatever considerations they deem appropriate." *Law*, 571 U.S. at 423. To the extent that the Trustee argues that the Debtors' exemption should be denied in Chapter 13 because of the good faith requirement, I disagree. Section 522, which governs exemptions, means the same thing in Chapter 13 as it does in Chapter 7.

The objection to the Debtors' claim of exemption is OVERRULED.

# # #